Payam Shahian (State Bar No. 228406)
pshahian@slpattorney.com
Karen E. Nakon (State Bar No. 278423)
knakon@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone:   (310) 277-1040
Facsimile:    (310) 943-3838

Matthew R. Mendelsohn (*Pro Hac Vice* Forthcoming)
mmendelsohn@mskf.net
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile:    (973) 228-0303

Attorneys for Plaintiff Farideh Haghayeghi

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARIDEH HAGHAYEGHI, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>GUESS ?, INC.;<br><br>        Defendant. | Case No.: 14-cv-00020-JAH-NLS<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, MOTION TO STRIKE THE CLASS ALLEGATIONS OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Date:       September 15, 2014<br>Time:       2:30 p.m.<br>Location:   Courtroom 13B<br><br>Complaint Filed:   January 3, 2014 |

# TABLE OF CONTENTS

I. INTRODUCTION .......................................................................................1

II. STATEMENT OF FACTS .........................................................................1

III. ARGUMENT .............................................................................................4

    A. The TCPA Is Liberally Construed To Protect Consumers ...................4

    B. Plaintiff's TCPA Claims Are Well-Pled ..............................................4

        1. Defendant Called Plaintiff's Cellular Telephone Via An ATDS ............6

        2. Defendant's Consent Defense Is, At Best, Irrelevant ................10

            (a) Prior Express Consent Is An Affirmative Defense That Does Not Defeat The Elements Of Plaintiff's Claim ...............10

            (b) Defendant's December 2013 Text Message Violates The FCC Regulations ...........................................................12

                (i) Defendant Effectively Concedes That It Did Not Obtain Prior Express *Written* Consent From Plaintiff, As Required Under The FCC Regulations ...................12

                (ii) Defendant Did Not Provide Clear And Conspicuous Disclosure To Plaintiff ............................................14

                (iii) Defendant's Cited Authority Is Inapposite..............17

            (c) Plaintiff Did Not Provide Prior Express Consent To Defendant In Connection With Its Pre-October 16, 2013 Text Messages ....................................................................18

    C. Defendant's Motion to Strike Should be Denied ...............................22

IV. CONCLUSION .........................................................................................25

i

# TABLE OF AUTHORITIES

**C**ASES

*Baird v. Sabre Inc.*, CV 13-999 SVW, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014) ........5

*Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364 (S.D. Cal. June 11, 2012)....................................................................................................... 11, 19

*DCD Programs, Ltd. V. Leighton*, 833 F.2d 183 (9th Cir. 1987) .....................................25

*Emanuel v. Los Angeles Lakers, Inc.*, CV 12-9936-GW SHX, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) .....................................................................................21

*Friedman v. Massage Envy Franchising, LLC*, No. 12-02962, 2013 WL 3026641 (S.D. Cal. June 13, 2013) .......................................................................................10

*Gager v. Dell Financial Services, LLC*, 727 F. 3d 265 (3d Cir. 2013)................................4

*Gragg v. Orange Cab Co., Inc.*, 2013 WL 195466 (W.D. Wash. Jan.17, 2013) ...............8

*Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598 (9th Cir. 2011) ...........................11

*Graves v. Sw. & Pac. Specialty Fin., Inc.*, C 13-1159 SBA, 2013 WL 5945851 (N.D. Cal. Nov. 4, 2013)...................................................................................................23

*Hickey v. Voxernet LLC*, No. C12-373 MJP, 887 F. Supp. 2d 1125 (W.D. Wash. Aug. 13, 2012) ...................................................................................... 5, 8, 10

*Hicks v. Client Servs., Inc.*, No. 07–61822–CIV, 2009 WL 2365637 (S.D. Fla. June 9, 2009)......................................................................................................12

*Hurrey-Mayer v. Wells Fargo Home Mortgage, Inc.*, 09 CV 1470 DMS NLS, 2009 WL 3647632 (S.D. Cal. Nov. 4, 2009)......................................................................11

*Ibey v. Taco Bell Corp.*, 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012), appeal dismissed (Nov. 28, 2012) .......................................................21

*In re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526 (N.D. Cal. 2012)................................................................................................25

*In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) ..................................................................................................23

*In re Jiffy Lube Intern., Inc., Text Spam Litig.,* 847 F.Supp.2d 1253 (S.D.Cal.2012)..9, 20

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609 (N.D. Cal. 2007).................................................................................................23

*Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241 (E.D. Cal. 2013) ...................................7

*Kazemi v. Payless Shoesource Inc.*, C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ...................................................................................................9

*Knutson v. ReplyA, Inc.*, 10-CV-1267 BEN WMC, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011)........................................................................................................11

*Kolinek v. Walgreen Co.*, 13 C 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014) ..........20

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010)................................4, 6

*Lusskin v. Seminole Comedy, Inc.*, 2013 LEXIS 86192 (S.D. Fla. June 19, 2013)..........19

*Maier v. J.C. Penney Corp., Inc.*, 13CV0163-IEG DHB, 2013 WL 3006415 (S.D. Cal. June 13, 2013) .............................................................................................passim

*Mashiri v. Ocwen Loan Servicing, LLC*, 3:12-CV-02838-L-MDD, 2013 WL 5797584 (S.D. Cal. Oct. 28, 2013)........................................................................8, 11

*Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230 (11th Cir. 2011).....21

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)......................6

*Olney v. Job.com, Inc.*, No. 12-01724, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013)...25

*Robbins v. Coca-Cola-Co.*, 13-CV-132-IEG NLS, 2013 WL 2252646 (S.D. Cal. May 22, 2013) ............................................................................................ 6, 8, 9, 11

*Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cal. April 13, 2011) .......6

*Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012)............................22

*Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 WL 5976230, at *5 (S.D. Cal. 2011)........................................................................................................12

*Satterfield v. Simon & Schuster, Inc.,* 569 F. 3d 946 (9th Cir. 2009) ....................... 4, 5, 19

*Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d 464 (E.D.N.Y. 2012)..........21

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014)............................................................................................................24

*Sherman v. Yahoo! Inc.*, 13CV0041-GPC-WVG, --- F. Supp. 2d ---, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014)........................................................................5, 22

*Shupe v. JPMorgan Chase Bank of Arizona*, CV 11-00501-TUC-RCC, 2012 WL 1344820 (D. Ariz. Mar. 14, 2012)..................................................................11

*Wolfkiel v. Intersections Ins. Servs. Inc.*, 13 C 7133, 2014 WL 866979, at *4 (N.D. Ill. Mar. 5, 2014) ..................................................................................24

STATUTES

47 U.S.C. § 227(b)(2) ............................................................................................5
47 U.S.C. § 227(b)(3) ............................................................................................5

REGULATIONS

47 C.F.R. § 64.1200(a)(2) ....................................................................................13
47 C.F.R. § 64.1200(f)(1).....................................................................................14
47 C.F.R. § 64.1200(f)(12)...................................................................................14
47 C.F.R. § 64.1200(f)(3).....................................................................................15
47 C.F.R. § 64.1200(f)(8)................................................................................ 13, 14

OTHER AUTHORITIES

*In re Rules and Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1839, 1856-67 (Feb. 15, 2012).................................................................12

S.Rep. No. 102–178, at 1, 1991 U.S.C.C.A.N. 1968 (1991)................................................4

# I.    INTRODUCTION

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, Motion to Strike the Class Allegations or in the Alternative, Motion for a More Definite Statement (ECF Doc. No. 23)[1] is premised on two arguments, each of which fails: (1) Plaintiff has not adequately alleged that Defendant used an automatic telephone dialing system ("ATDS") to send the text message to Plaintiff; and (2) Plaintiff gave prior express consent to receive communications from Defendant and its agents.

In truth, courts consistently (1) find ATDS allegations identical to Plaintiff's sufficient to allege a TCPA claim, and (2) decline to find prior express consent under nearly identical circumstances.  Defendant's arguments range from the wholly irrelevant (citing generic cases instead of decisive TCPA authority) to the patently erroneous (taking positions directly contrary to controlling authority); they obscure the simple fact that Defendant did not obtain prior express <u>written</u> consent from Plaintiff, a requirement imposed on all telemarketing text messages sent on or after October 16, 2013.

Defendant's repeated failure to acknowledge decisive authority adverse to its position results in a gross mischaracterization of TCPA jurisprudence. Defendant's Motion should be denied in its entirety.

# II.    STATEMENT OF FACTS

In recent years, marketers stymied by federal laws limiting solicitation by telephone, facsimile machine, and email, have increasingly looked to alternative technologies to send bulk solicitations to consumers easily and cheaply.  (FAC ¶ 8.)  One of the newest methods of bulk marketing is sending text message advertisements sent to mobile phones.  (*Id.* ¶ 9.)  Unlike faxes and unanswered

---

[1] Citations to "Mot." or "Motion" refer to Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's First Amended Complaint, Motion to Strike the Class Allegations or in the Alternative, Motion for a More Definite Statement (ECF Doc. No. 23-1).

phone calls, a text message allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. (*Id.* ¶ 10.) Many cellular phones immediately alert the recipient of new text messages. (*Id.*) Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members, and friends. (*Id.*) Text messaging is also used by schools, police departments, fire departments, and emergency medical services across the country. (*Id.*)

The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages. (*Id.* ¶ 11.) And unlike other forms of advertisement, text messages actually cost its recipients money, because cellular phone users must frequently pay their wireless service providers either for each text message they receive, or incur a usage allocation deduction to their text plans, regardless of whether or not the message is authorized. (*Id.* ¶ 12.)

Over the course of an extended period beginning no later than in 2010, Defendant and/or its agents directed the mass transmission of text messages to cellular phones nationwide in an attempt to reach customers or potential customers of Defendant's products. (*Id.* ¶ 13.) Each such text message call was made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. (*Id.* ¶¶ 18, 34, 39.) By using an ATDS, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of cellular phone numbers of consumers without human intervention. (*Id.*) These text messages were made *en masse* without the prior express consent of Plaintiff and the other members of the Class to receive such text messages. (*Id.*)

**Defendant's Text Messages to Plaintiff Haghayeghi**

During the class period, Plaintiff received multiple unsolicited SMS or "text" messages on her cellular phone from Defendant and/or its agents. (FAC ¶

14.) The following are just some of the examples of text messages that Plaintiff has received during the class period:

> Our essential bandeaus are perfect for any summer look! Spend $75+ through 7/21 and get a bandeau with your purchase. Start shopping at GUESS.com.

> Introducing the new GUESS Student & Military Discount! Take 15% off in-store with a valid student or military ID! Find a store near you at http://vbs.cm/30a7U2

> GUESS denim just got sexier! Try on a pair of full price GUESS jeans & get $20 off each pair. Shopping at GUESS.com? Enter code DENIM20 at checkout.

> Tonight, America's Next Top Model gets taken to new heights! Tune into The CW at 8/7c to see the contestants rock GUESS denim in the ultimate runway challenge!

(*Id.*)

In fact, Plaintiff received an unsolicited SMS or text messages as recently as December of 2013:

> GUESS: Tis the season to indulge, so why not spoil yourself? Enjoy 40% OFF everything at GUESS stores this Saturday and Sunday, 12/14 - 12/15.

(FAC ¶ 15.)

These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i). (FAC ¶ 16.) Rather, the messages were made to promote Defendant's goods and services. (*Id.* ¶ 17.) In fact, Defendant concedes that the messages constitute telemarketing and advertising: "Upon request of customers, Guess? sends promotional text messages to customers as part of its Guess List program." (*See* Mot. at 7:20-21, emphasis added.)

These messages were placed to Plaintiff's cellular phone using an ATDS—as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A)—which had the capacity to store or produce and dial numbers randomly or sequentially, and to place telephone calls and/or SMS or text messages to Plaintiff's cellular telephone. (FAC ¶ 18.) The telephone numbers to which

Defendant or its agents called and/or sent the text messages were assigned to cellular telephone services for which Plaintiff and prospective class members incurred charges in violation of 47 U.S.C. § 227(b)(1).  (*Id.* ¶ 19.)

Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A).

## III.   ARGUMENT

### A.   The TCPA Is Liberally Construed To Protect Consumers

The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102–78, at 1, 1991 U.S.C.C.A.N. 1968 (1991)).  "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls.  *Gager v. Dell Financial Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).  "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.*

### B.   Plaintiff's TCPA Claims Are Well-Pled

Whether a plaintiff has stated a claim under the TCPA turns on the statutory language of 47 U.S.C. § 227(b)(1)(A)(iii).  *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1169 (N.D. Cal. 2010).  Section 227 of the TCPA, entitled "Restrictions on use of telephone equipment," provides as follows:

> (a) Definitions. As used in this section—
> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.
> (b) Restrictions on use of automated telephone equipment.
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using any automatic telephone dialing system or an artificial or prerecorded voice—

...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*Id.* at 1169 (quoting 47 U.S.C. § 227).  Among other things, the TCPA made it unlawful for any person to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any cellular telephone number.  *Baird v. Sabre Inc.*, No. CV 13-999 SVW, 2014 WL 320205, at *1 (C.D. Cal. Jan. 28, 2014).[2]

A text message is a call within the meaning of the act.  *Id.*; *Maier v. J.C. Penney Corp., Inc.*, No. 13CV0163-IEG DHB, 2013 WL 3006415, at *2 (S.D. Cal. June 13, 2013) (citing *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009) ("The Ninth Circuit has established that text messages (also referred to as SMS) are encompassed within the term 'call' as used in the TCPA and are therefore subject to its restrictions.")).  Additionally, sending a single text message is actionable. *Satterfield*, 569 F.3d at 955 (finding single text message actionable under the TCPA in the context of a motion for summary judgment); *Sherman*, 2014 WL 369384, at *1 ("[A]bsent prior express consent, a single call or text with the use of an ATDS may be actionable under the TCPA."); *Hickey v. Voxernet LLC*, No. C12-373 MJP, 887 F. Supp. 2d 1125, 1133 (W.D. Wash. Aug. 13, 2012) (finding single text message actionable under the TCPA).

"[B]ecause the TCPA is designed to combat mass unsolicited commercial telemarketing, at times involving thousands of calls or text messages, notice

---

[2] Congress authorized a private right of action to enforce the Act.  *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, --- F. Supp. 2d ---, 2014 WL 369384, at *1 (S.D. Cal. Feb. 3, 2014) (citing 47 U.S.C. § 227(b)(3)).  Additionally, Congress directed the Federal Communications Commission to "prescribe regulations to implement the requirements of" the TCPA.  *Id.* (citing 47 U.S.C. § 227(b)(2)).

pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message." *Kramer*, 759 F. Supp. 2d at 1172. "[T]he language of the TCPA makes no reference to the time, content, sequence, or volume of calls or messages as a prerequisite to liability; rather, the wording of the statute is expansive and content neutral." *Robbins v. Coca-Cola-Co.*, 13-CV-132-IEG NLS, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013); *see also Robinson v. Midland Funding, LLC*, 2011 WL 1434919, at *3 (S.D. Cal. April 13, 2011) ("the federal notice pleading standards do not require a plaintiff to allege details ... about the [call's] time and context.").[3]

**"[T]o plead a TCPA claim, Plaintiffs need only allege two elements: (1) a call to a cellular telephone; (2) via an ATDS."** *Robbins*, 2013 WL 2252646, at *2, emphasis added.[4] Plaintiff has adequately alleged that Defendant called her cellular telephone via an ATDS, as described in greater detail below. Nothing more is required to state a TCPA claim. Accordingly, her complaint is well pled.[5]

### 1. Defendant Called Plaintiff's Cellular Telephone Via An ATDS

The requirements for an allegation of the use of an ATDS to survive a Rule 12(b)(6) motion to dismiss generally follow one of two approaches. *See Maier*

---

[3] Plaintiff, however, *does* allege the dates and substance of the text messages at issue. (*See* FAC ¶¶ 14, 15.)

[4] Defendant, citing *Emanuel v. L.A. Lakers, Inc.*, No. 12-9936-GW (SHx), 2013 WL 1719035, at *2 (Apr. 18, 2013) and *Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *8 (E.D. Mich. June 29, 2010), manufactures a third pleading requirement, namely, the absence of prior express consent. (*See* Mot. at 5:3-14.) The absence of prior express consent, however, is not a pleading requirement. It is a requirement for establishing liability. *Pugliese*, for instance, discusses that third requirement in connection with a motion for summary judgment, not a motion to dismiss. *See Pugliese*, at *6 ("Defendants seek summary judgment on Plaintiffs' TCPA claims...."). Similarly, *Emanuel* relies on *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.2012), which also discusses the requirement in connection with whether the plaintiff "demonstrated a likelihood of success on the merits." *Meyer*, at 1043.

[5] Notably, Defendant does not dispute that (1) it made "calls" to Plaintiff's cellular telephone for the purposes of the TCPA, (2) its text messages were not made for emergency purposes, and (3) its text messages consist of telemarketing and advertising content.

---

6

2013 WL 3006415, at *3.  The <u>first</u> approach permits minimal allegations regarding use of an ATDS, in recognition of the fact that at the pleadings stage, the defendant likely has sole knowledge of the type of equipment it used to place the "call" in dispute, and will therefore only come to light once discovery has been undertaken.  *Id.*  Under this approach, the allegation of receipt of a text message, along with the allegation that this message was sent by a machine with the capacity to store and produce random telephone numbers, has been sufficient to plead a defendant's use of an ATDS.  *Id.*; *see also Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241, 1247-48 (E.D. Cal. 2013) (alleging that "Defendant used an automatic telephone dialing system" is "sufficient on its own to support Plaintiff's claims [with respect to Defendant's use of an automatic dialing system." ).  "While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage."  *Maier*, 2013 WL 3006415, at *3.

Plaintiff satisfies the standards of this first approach.  She alleges Defendant sent her a text message using an ATDS—a machine with the capacity to store and produce random telephone numbers.  *Compare* FAC ¶ 18 *with Maier*, 2013 WL 3006415, at *3 ("Plaintiff's Complaint alleges both that she received a 'call' in the form of a text message and that an ATDS, with the functional capacity required by the statute, placed this message, thereby satisfying the first approach as described above.").

The <u>second</u> approach has been that a TCPA plaintiff must go beyond using statutory language alleging the defendant's use of an ATDS and must include factual allegations about the "call" within the complaint allowing for a reasonable inference that an ATDS was used.  *Id.*  "With respect to the use of an automatic telephone dialing system ('ATDS')…'neither section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with particularity.'  []  Rather, courts consider whether, 'read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used [an ATDS].'"

*Mashiri v. Ocwen Loan Servicing, LLC*, No. 3:12-CV-02838-L-MDD, 2013 WL 5797584, at *4 (S.D. Cal. Oct. 28, 2013); *see also Robbins*, 2013 WL 2252646, at *3 ("'The issue is whether the allegations of the complaint, taken as a whole and including the nature of the communication, give rise to a plausible belief that the message was sent using an ATDS.'") (quoting *Gragg v. Orange Cab Co., Inc.*, 2013 WL 195466, at *2 n.3 (W.D. Wash. Jan.17, 2013)). "'Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more.'" *Robbins*, 2013 WL 2252646, at *3 (quoting *Gragg v. Orange Cab Co., Inc.*, 2013 WL 195466, at *2 (W.D. Wash. Jan.17, 2013)); *Hickey*, 887 F. Supp. 2d at 1129-30 ("[C]ourts have noted 'the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery' and found that courts can rely on details about the call to infer the use of an ATDS."). The following are examples of indirect factual allegations supporting a reasonable inference of use of an ATDS: (1) generic content of a message; (2) impersonal advertising content of a text message received from a particular sender with no reason to contact the plaintiff; and (3) generic content and automatic generation of the message. *Maier*, 2013 WL 3006415, at *3.

Plaintiff satisfies the standards of this second approach as well. She alleges as follows: (i) "Over the course of an extended period beginning in or about 2010, if not earlier, Defendant and/or its agents directed the mass transmission of text messages to cellular phones nationwide in an attempt to reach customers or potential customers of Defendant's products" (FAC ¶ 13); (ii) "By using [an ATDS], Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of cellular phone numbers of consumers without human intervention" (*id.* ¶¶ 34, 39); and (iii) "These text messages were

made *en masse* through the use of a short code and without the prior express consent of Plaintiff and the other members of the Class to receive such text messages" (*id.*). Additionally, Plaintiff alleges the contents of the various text messages—which, on their face, consist of impersonal, generic advertising content that has been automatically generated. (*See id.* ¶¶ 14, 15.)

Courts have repeatedly held such allegations adequate under the second approach. *See, e.g.*, *Maier*, 2013 WL 3006415, at *4 (finding plaintiff's ATDS allegation satisfied the second approach because she "supplement[ed] her ATDS allegation with a factual allegation of the specific content of the text message and the number from which it was received[,]" and because "the generic and impersonal content of the message support[ed] the reasonable inference of use of an ATDS."); *Robbins*, 2013 WL 2252646, at *3 ("Here, Plaintiffs allege numerous text messages received without prior consent, sent nationwide and en masse via SMS, promoting Coke Zero and other Coke products. . . . These allegations, though indirect, suffice to plead the use of an ATDS in connection with Plaintiffs' TCPA claims.") (internal citations omitted); *In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage. It is possible that further litigation will determine that no ATDS was used, but the complaint has pleaded enough facts 'to raise a right to relief above the speculative level."); *Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) ("[P]laintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS. This is sufficient to meet federal pleading

requirements."); *Hickey*, 887 F. Supp. 2d at 1130 (finding "Plaintiff's allegation regarding the generic content and automatic generation of the message [was] sufficient to infer the use of an ATDS[,]" and that "Plaintiff ha[d] . . . provided sufficient detail to make a plausible claim under the TCPA and to allow for discovery of further evidence related to Voxer's ATDS functionality.").

Defendant inexplicably cites *Friedman v. Massage Envy Franchising, LLC*, No. 12-02962, 2013 WL 3026641 (S.D. Cal. June 13, 2013) in support of its argument that Plaintiff has not adequately alleged the use of an ATDS. In *Friedman*, unlike here, plaintiffs alleged <u>only</u> "'that the texts that they received "were placed via an 'automatic telephone dialing system,' [] as defined by 47 U.S.C. § 227(a)(1) as prohibited by 47 U.S.C. § 227(b)(1)(A)." []'" *See Friedman*, at *2. The court found that this single statement was insufficient to allege the use of an ATDS. *Id.* By contrast, here, Plaintiffs have, consistent with the second approach, alleged additional factual details to show that Defendant used an ATDS. (*See, e.g.*, FAC ¶¶ 13, 34, 39.)

More important, the *Friedman* court suggests that the addition of a single factual allegation would have validated the plaintiff's ATDS allegations: that the described text messages came from a SMS short code registered to defendant. *See Friedman*, at *3. Here, Plaintiff alleges that "[Defendant's] text messages were made *en masse* through the use of a short code." (*Id.* ¶¶ 34, 39.) Under *Friedman*, therefore, Plaintiff's ATDS allegations are sufficiently pled.

In short, Plaintiff adequately alleges Defendant's use of an ATDS. Because she also alleges that Defendant called her for the purposes of the TCPA (an allegation Defendant does not dispute), Plaintiff's complaint meets both requirements to plead a TCPA claim. (*See* § III.B, *supra*.)

## 2. Defendant's Consent Defense Is, At Best, Irrelevant

### (a) Prior Express Consent Is An Affirmative Defense That Does Not Defeat The Elements Of Plaintiff's Claim

Defendant next contends that "Plaintiff expressly consented to receiving text messages from Guess? by providing her phone number as part of the Guess list program[.]" (*See* Mot. at 7:17-19.)  This argument is fundamentally misguided.

As a threshold matter, it is well-settled that "[e]xpress consent 'is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.'"  *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011); *Mashiri*, 2013 WL 5797584, at *5 (same); *Robbins*, 2013 WL 2252646, at *2 ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim.") (quoting *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012)); *Knutson v. ReplyA, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *1 (S.D. Cal. Jan. 27, 2011) ("The statute indicates that these types of calls are not unlawful if made with the express consent of the calling party, but the FCC has clarified that this argument is a defense and not an element that must be pled by Plaintiff."); *Hurrey-Mayer v. Wells Fargo Home Mortgage, Inc.*, 09 CV 1470 DMS NLS, 2009 WL 3647632, at *4 (S.D. Cal. Nov. 4, 2009) ("Defendant asserts that Plaintiff consented to its calls, but that argument is a defense to Plaintiff's claim."); *Shupe v. JPMorgan Chase Bank of Arizona*, No,. CV 11-00501-TUC-RCC, 2012 WL 1344820, at *4 (D. Ariz. Mar. 14, 2012), report and recommendation adopted, No. CV 11-501-TUC-RCC, 2012 WL 1344786 (D. Ariz. Apr. 18, 2012) ("The 'express consent' provision, however, is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").

"Thus, arguing that the Plaintiff provided prior express consent is an affirmative defense which does not defeat the elements of Plaintiff's claim." *Mashiri*, 2013 WL 5797584, at *5.  Notwithstanding this well-settled principle of law, Defendant argues that Plaintiff has not established an absence of express

consent.  Given the abundance of case law on this score, Defendant's failure to acknowledge this adverse authority is puzzling.

Because Plaintiff has adequately alleged Defendant's use of an ATDS to send text messages, her complaint is well-pled.  Defendant asserts several other arguments—all relating to consent.  Plaintiff addresses these as well, even though they are completely irrelevant to, and do not defeat, Plaintiff's *prima facie* case.[6]

### (b) Defendant's December 2013 Text Message Violates The FCC Regulations

### (i) Defendant Effectively Concedes That It Did Not Obtain Prior Express *Written* Consent From Plaintiff, As Required Under The FCC Regulations

In response to "evidence of continued consumer frustration with unwanted telemarketing robocalls," the Federal Communications Commission ("FCC") amended 47 C.F.R. § 64.1200 to, among other things, "require prior express **written** consent for telemarketing robocalls to wireless numbers and residential lines."  *In re Rules and Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1839, 1856-67 (Feb. 15, 2012) ("2012 TCPA Order") at § 18 (emphasis added).[7]  The amended version of 47 C.F.R. § 64.1200 became effective on October 16, 2013:

---

[6] Moreover, whether Defendant obtained prior express consent (written or otherwise) is a disputed factual matter that should not be resolved on a motion to dismiss.  A motion for summary judgment—rather than a motion to dismiss—is the proper place for a defendant to establish that a consumer's claim fails because he or she provided prior express consent.  *See Connelly*, 2012 WL 2129364, at *3; *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 WL 5976230, at *5 (S.D. Cal. 2011)  (citing *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 WL 5976239, at *2 (S.D. Cal. Feb. 9, 2011) (placing the burden on the creditor to establish prior express consent) and *Hicks v. Client Servs., Inc.*, No. 07–61822–CIV, 2009 WL 2365637, at *5 (S.D. Fla. June 9, 2009) ("The burden of establishing prior express consent is on the Defendant.")).

[7] *And see id.* at § 24 ("While current regulations provide a measure of consumer protection from unwanted and unexpected calls, the complaint data, as noted above, show that the proliferation of intrusive, annoying telemarketing calls continues to trouble consumers. [] We conclude that requiring prior express written consent for telemarketing calls utilizing autodialed or prerecorded technologies will further reduce the opportunities for telemarketers to place

---

No person or entity may … [i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express **written** consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a ''health care'' message made by, or on behalf of, a ''covered entity'' or its ''business associate,'' as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

47 C.F.R. § 64.1200(a)(2) (emphasis added).

The term *prior express written consent* means an agreement, in writing, **bearing the signature of the person called** that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, **and the telephone number** to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8) (emphasis in original).

Defendant sent Plaintiff a text message as recently as December of 2013, after the effective date of the amended regulations:

GUESS: Tis the season to indulge, so why not spoil yourself? Enjoy 40% OFF everything at GUESS stores this Saturday and Sunday, 12/14 - 12/15.

(FAC ¶ 15.)

Tellingly, Defendant's Motion does not deny that (1) advertising or telemarketing text messages sent on or after October 16, 2013 require prior express written consent, (2) its December 2013 text message consists of advertising and telemarketing[8], and (3) it failed to obtain prior express written consent from Plaintiff in connection with the December 2013 text message.

─────────────

unwanted or unexpected calls to consumers. We believe that requiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer – providing permission in writing -- to authorize autodialed or prerecorded telemarketing calls, and will reduce the chance of consumer confusion in responding orally to a telemarketer's consent request.").

[8] In fact, Defendant admits that its text messages are "promotional." (*See, e.g.*, Mot. at 7:20-21.) It is no surprise that Defendant has not challenged the advertising and telemarketing status of any of its text messages—both pre- and

─────────────

13

Rather, Defendant merely contends, without citing any evidence—much less judicially noticeable evidence—that "Plaintiff expressly consented to receiving text messages from Guess? by providing her phone number as part of the Guess List program[.]" (*See* Mot. at 7:17-19.) Conspicuous by its absence, however, is any reference to a written agreement that bears "the signature of [Plaintiff] that clearly authorizes [Guess] to deliver or cause to be delivered to [Plaintiff] advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). In other words, Defendant has submitted no evidence of a writing showing (1) Plaintiff's signature, (2) the authorized telephone number, and (3) that an ATDS would be used to send advertising and telemarketing messages.

Accordingly, even if the consent issue could be considered at this early stage of the litigation, Defendant has not established that it obtained proper written consent.

### (ii)  Defendant Did Not Provide Clear And Conspicuous Disclosure To Plaintiff

Separate and apart from its obligation to obtain written consent from a consumer (*e.g.*, the signature for the corresponding telephone number) under the amended regulations, a company must also provide "clear and conspicuous disclosure" of the terms of the consent:

---

post-October 16, 2013—because they so plainly consist of telemarketing and advertising. Under the relevant regulations, "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (emphasis in original). "The term *advertisement* means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1) (emphasis in original). Defendant's December 2013 text message encourages the purchase, and advertises the commercial availability, of Guess? goods and services.

> The [prior express] written [consent] agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). "The term clear and conspicuous means a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." 47 C.F.R. § 64.1200(f)(3) (emphasis in original.) Defendant fails to establish that it provided the necessary disclosures for its December 2013 text message.

Defendant suggests that its "Guess List Terms and Conditions" ("Terms") fulfill the disclosure requirements. According to Defendant, the "Guess List Terms and Conditions are readily accessible [on its website, Guess.com] and clearly state that 'by providing your mobile number for the GUESS List program, you are agreeing to subscribe to GUESS Mobile Alerts.'" (*See* Mot. at 8:7-11.)[9]

That statement (*i.e.*, "by providing your mobile number for the GUESS List program, you are agreeing to subscribe to GUESS Mobile Alerts") falls far short of establishing that Defendant provided the necessary "clear and conspicuous disclosure" to Plaintiff. For example, it fails to disclose that Plaintiff was authorizing Defendant to deliver telemarketing calls using an ATDS. Neither the phrase "automatic telephone dialing system" nor any of its variants ever appear in the statement or, more broadly, the Terms. Second, it fails to disclose that Plaintiff was not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or

---

[9] Notably, Defendant does not claim that it provides the Terms to consumers prior to obtaining their phone numbers. Rather, it merely suggests that the Terms are "accessible" on the Guess.com website.

---

15

services.[10]  Third, the disclosure notice is not separate and distinguishable from other disclosures.  To the contrary, it is buried among numerous other unrelated disclosures (for example, "Enrollment Terms," "General Terms and Conditions," "Points and Awards Accrual," "Awards Redemption," "Participating Stores," and "Modifications and Termination").  Nor are the Terms themselves "readily accessible" on the Guess.com website, as Defendant asserts.  Plaintiff invites the Court to attempt to find where, among a visual cacophony of images and confusing menu options, the Terms are located on the website.[11]

Further, for reasons articulated more fully in Plaintiff's accompanying Evidentiary Objections, the Guess List Terms and Conditions are inadmissible. For example, Defendant does not proffer any evidence that Plaintiff ever saw or reviewed the corresponding webpage at any time, let alone prior to allegedly releasing her telephone number.  The Terms are therefore irrelevant to any consent analysis.  Moreover, the Terms are never referenced in Plaintiff's complaint and they are not a proper subject of judicial notice because, among other things, their import is disputed.[12]  In sum, all references to the webpage should be stricken from the record.

---

[10] Defendant may contend that the Terms and Conditions, which state that "[n]o purchase is necessary to become a Member [of the Guess List]," meet this second requirement.  (*See* Ex. A to Dooley Decl. § 2(a).)  This disclosure, however, is inadequate.  The regulations require a disclosure that the person is not required to enter into the agreement as a condition of purchasing any property, goods, or services.  In other words, (a) entering into the agreement is not a precondition for (b) purchasing goods or services.  Defendant's "disclosure," by contrast, states that (b) purchasing goods is not a precondition for (a) becoming a member of the Guess List (*i.e.*, entering into the agreement). This inverts the proper disclosure, and is therefore a violation of the amended regulations.

[11] Tellingly, the Terms were last revised on March 12, 2013, prior to the date the amended regulations became effective, which further evidences that the Terms are not compliant with the amended regulations.  (*See* https://shop.guess.com/en/customercare/GuessListTermsAndConditions/ "Last revision 03/12/2013"), last visited on August 14, 2014.)

[12] *Maier*, *supra*, is instructive.  In *Maier*, defendant argued that the text message in question was sent to plaintiff after she allegedly submitted her cell phone number to a Rewards Program website and agreed to be contacted by

Finally, even if the disclosures were proper—and they are not—this would not alter the fact that Defendant failed to obtain a written agreement that bears the signature of Plaintiff and that clearly authorizes Defendant to deliver or cause to be delivered to Plaintiff advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and Plaintiff's telephone number to which she authorized such advertisements or telemarketing messages to be delivered. *See* 47 C.F.R. § 64.1200(f)(8).

### (iii)    Defendant's Cited Authority Is Inapposite

Because Defendant sent an advertising and telemarketing text message to Plaintiff after October 16, 2013, the cases it cites, all of which involve texts sent or voice calls made <u>prior</u> to October 16, 2013, are inapplicable to the instant matter. *See Emanuel*, 2013 WL 1719035, at *1 (text message sent on or about October 13, 2012); *Ibey*, 2012 WL 2401972, at *1 (text message sent on or about February 14, 2012); and *Saunders v. NCO Fin. Sys., Inc*., 910 F. Supp. 2d 464, 466 (E.D.N.Y. Dec. 19, 2012) (automated voice calls made on October 14, 2010 and March 16, 2011).

---

defendant at that number.  2013 WL 3006415, at *4.  Defendant contended that this prior contact made use of an ATDS less plausible than an alternative inference of a customer specific text through human agency.  *Id.*  The court found that because this argument was based upon a factual allegation outside of plaintiff's complaint, such an allegation could not be considered for the purpose of ruling on the Rule 12(b)(6) motion absent a showing that it was based on documents incorporated by reference in the complaint, or was a matter of judicial notice, and that because no such showing was made by defendant, the argument need not be addressed further.  *Id.*

*Maier*'s reasoning applies with equal force here.  Plaintiff's complaint does not reference the Terms or attach them as an exhibit.  The Terms are also disputed, and are therefore not proper subjects of judicial notice.

Although it is true, as Defendant asserts, that Plaintiff references the Guess.com website in her complaint, that assertion is true only in the most trivial sense possible.  Defendant's offending text messages reference the website's address.  In quoting Defendant's text messages, Plaintiff was forced to reproduce the address in her allegations.  (*See* FAC ¶ 14.)  Plaintiff, however, in no way cited the Guess.com website as evidence.  Moreover, as explained above, the Terms are hidden beneath layers of confusing website design.

In sum, Defendant failed both to obtain written consent from Plaintiff and provide a "clear and conspicuous disclosure" to her.[13]

### (c) Plaintiff Did Not Provide Prior Express Consent To Defendant In Connection With Its Pre-October 16, 2013 Text Messages

Defendant unquestionably failed to obtain prior express written consent with respect to its December 2013 text message. But even as to its pre-October 16, 2013 text messages, Defendant failed to obtain prior express consent from Plaintiff.[14]

Defendant asserts that "Plaintiff expressly consented to receiving text messages from Guess? by providing her phone number to Defendant as part of the Guess list program" and that "[u]pon request of customers, Guess? sends promotional text messages to customers as part of its Guess List program." (*See*

---

[13] Defendant fixates on Plaintiff's deletion of the following allegation from her First Amended Complaint: "Defendant never told Plaintiff that it would use her cellular number to send her promotional text messages through an ATDS." (Compl., ECF Doc. No. 1, ¶ 19.) According to Defendant, the deletion confirms that Plaintiff gave Defendant prior express consent. First, Defendant fails to inform the Court that Plaintiff, with her First Amended Complaint, also alleged the existence of a December 2013 text that Defendant sent after the October 16, 2013 amendments. Second, this argument is a *non sequitur*. Even if the deletion of that paragraph could somehow be viewed as a concession (that Defendant in fact told Plaintiff it would use her cellular number to send her promotional text messages through an ATDS), that concession would not dispose of the consent issue. The prior express consent analysis regarding the December 2013 text message consists of two steps: (1) did Defendant provide "clear and conspicuous" disclosure of the terms of the written consent and (2) did Defendant in fact obtain prior express written consent? That Defendant allegedly informed Plaintiff that it would use her cellular number to send promotional text messages through an ATDS bears only on the first step of that analysis. (As set forth in greater detail above, such an allegation does not establish proper disclosure under the amended regulations' stringent requirements.) Defendant, however, never arrives at the next step: demonstrating that it, in fact, obtained written consent consistent with amended 47 C.F.R. 64.1200. (As set forth in greater detail above, consent is an affirmative defense on which Defendant bears the burden of proof.) In short, Defendant's "deletion" argument is a mere distraction from the underlying issues.

[14] Again, Plaintiff addresses and rebuts Defendant's prior express consent arguments, even though prior express consent is an affirmative defense that does not defeat the elements of Plaintiff's TCPA claim.

---

18

Mot. at 7:17-21.)  Defendant further suggests that the purported consent was given

orally.  (*See* Mot. at 7:2-3 ["If a person knowingly releases her phone number

<u>during a transaction</u>, she has in effect given her permission to be called at the

number provided."], emphasis added.)[15]  Yet, even if this were accurate, Defendant

has offered no evidence showing that it obtained express consent <u>prior</u> to obtaining

Plaintiff's cell phone number.  Nor, as explained above, has Defendant offered any

evidence that Plaintiff even saw the Guess List Terms and Conditions prior to

(ostensibly) releasing her phone number.  Simply because the Terms are listed on a

website does not mean that Plaintiff was afforded an opportunity to review them

prior to releasing her number.

Moreover, the mere act of providing a cell phone number to a company in

connection with a retail transaction does <u>not</u> constitute prior express consent to

receive telemarketing text messages that are wholly unrelated to that transaction.

*Connelly* is instructive:

> Regarding the booking of reservations, Hilton has failed to explain
> how the mere registration of a cellular telephone number at the time of
> booking a hotel reservation constitutes prior express consent for the
> telephone calls at issue here. "Express consent is '[c]onsent that is
> clearly and unmistakably stated.'" *Satterfield v. Simon & Schuster,*
> *Inc.,* 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law
> Dictionary 323 (8th ed.2004)). Unlike the Honors Program
> application, Hilton points to no evidence that in booking a hotel
> reservation Merritt agreed to Hilton's terms and conditions, including
> the possibility that contact information might be used to make special
> offers or promotions by telephone. Without more, the Court cannot
> conclude that one who provides a contact telephone number in
> booking a hotel reservation is "clearly and unmistakably" consenting
> to receive promotional calls. *Id.*

*Connelly*, 2012 WL 2129364 at *4.  *See also Lusskin v. Seminole Comedy, Inc.*,

2013 LEXIS 86192, at *9 (S.D. Fla. June 19, 2013) ("Lusskin's admission that he

provided his cell number to Seminole Comedy as part of the online ticket purchase

---

[15] These are exactly the sort of inadmissible assertions that are barred by *Maier*.
(*See* n.12, *supra*.)

does not mean that, as a matter of law, he consented to receive promotional text messages by Seminole Comedy through an automatic-dialing system."); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d at 1258 n.7 (doubting that provision of telephone number on invoice constitutes express consent under statute); *Kolinek v. Walgreen Co.*, 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (holding that the scope of a consumer's consent depends on its context and the purpose for which it is given, and that consent for one purpose does not equate to consent for all purposes); 2012 TCPA Order ¶ 25 ("[One commenter] argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect marketing and service calls.[] We disagree. Consumers who provide a wireless phone number for a limited purpose – for service calls only – do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted.").

Defendant has not articulated under what circumstances Plaintiff allegedly provided her cell phone number to Defendant—let alone point to any evidence that she contemplated the possibility that the contact information might be used to make special offers or promotions via text message.[16] Defendant's telemarketing text messages, in other words, are completely unrelated to whatever limited purpose for which Plaintiff allegedly provided her phone number. Moreover, merely providing a phone number is conduct that, at best, suggests consent; it is not a direct expression thereof. Any consent under these circumstances would be implied and insufficient under the TCPA.

---

[16] As explained above, Defendant ought not be permitted to rely on the Guess List Terms and Conditions in support of its argument that it provided proper disclosures. Defendant has offered no evidence that Plaintiff (or any other person, for that matter) was provided or reviewed the Terms prior to Defendant receiving the phone number.

Defendant's cited cases do not compel a different conclusion.  In *Emanuel*, for example, "[d]efendant's message provided [p]laintiff with information relevant to his request." *Emanuel*, 2013 WL 1719035 at *4; *see also id.* at *3 ("[M]any federal courts have concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction.") (emphasis added).  In *Ibey*, defendant sent "a single, confirmatory text message in response to an opt-out request from Plaintiff[.]" *Ibey*, at *3.[17]  In contrast, here, Defendant has not, consistent with its burden of proof, shown that the subject text messages are in any way related to the transaction in which Plaintiff purportedly provided her cell phone number.

*Emanuel* and *Ibey* are also inapposite because, unlike here, the consumers in those cases voluntarily initiated contact with the company, to which the company then responded.  *See Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW SHX, 2013 WL 1719035, at *4 (C.D. Cal. Apr. 18, 2013) (plaintiff admitted that he first voluntarily texted the defendant); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012), appeal dismissed (Nov. 28, 2012) (plaintiff sent opt-out text to defendant, who responded with a text confirming that he had opted out of receiving text message notifications).

Indeed, the Southern District has expressly distinguished *Ibey* and similar district court cases on their facts:

---

[17] *Saunders*, a non-binding New York District Court case, is inapposite because it involves debt collection calls, which differ from the telemarketing text messages at issue in this case. *See Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d 464, 466 (E.D.N.Y. 2012); *see also Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230, 236 (11th Cir. 2011) ("[T]he FCC has unequivocally stated that 'calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing' and 'calls regarding debt collection . . . are not subject to the TCPA's separate restrictions on "telephone solicitations.'"").  In short, the rules applying to, and the policies underlying, the text messages here are more stringent than those applying to debt collection calls.

The Court finds *Ibey* and other similar district court cases finding prior express consent are distinguishable. In *Ibey,* the allegedly unsolicited text message was sent in response to a voluntary text message sent from plaintiff to cease communications. 2012 WL 2401972 at *3. The plaintiff had initially agreed to receive text messages from the defendant, but then changed his mind. *Id.* He then sent the text message "STOP" to the defendant. *Id.* In response, defendant sent plaintiff a confirmation text message that plaintiff had opted out of receiving text message notifications. *Id.* Based off of this single text message, plaintiff filed a lawsuit alleging a violation of the TCPA. *Id.* In granting defendant's motion to dismiss, the court reasoned that "[d]efendant's sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA." *Id.* Unlike the plaintiff in *Ibey,* Plaintiff Sherman did not send a voluntary message to Yahoo! prior to receipt of the unsolicited text message. Plaintiff did not provide Yahoo! prior express consent or take any action which would have justified a response or confirmation by Yahoo! Based on these facts, the Court concludes Plaintiff did not offer his prior express consent to Yahoo! to be contacted within the meaning of § 227(b)(1).

*Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014) (footnotes and internal citations to record omitted).  Likewise, Plaintiff here never sent a text message to Defendant or otherwise took any action that would have justified a response.  (*See* FAC ¶ 16.)  Accordingly, Plaintiff did not offer her prior express consent to Defendant to be contacted within the meaning of the TCPA.

### C.    Defendant's Motion to Strike Should be Denied

Defendant is urging the Court to strike Plaintiff's class definition at the pleading stage, prior to the commencement of class discovery and prior to the filing of a motion for class certification, on the basis that it is a "fail-safe" class.  A motion to strike class allegations at this early stage, however, is disfavored. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (a motion to strike class allegations under Rule 12(f) "appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification.  [] The Court finds that class suitability issues are best resolved

during a motion for class certification."); *Graves v. Sw. & Pac. Specialty Fin., Inc.*, C 13-1159 SBA, 2013 WL 5945851, at *4 (N.D. Cal. Nov. 4, 2013) (denying defendant's motion to strike the class allegations, on the grounds that "Defendant's arguments regarding the class allegations [were] essentially arguments in opposition to a class certification motion that ha[d] yet to be filed[,]" which "are best addressed at the class certification stage after the parties have had an opportunity to conduct discovery and Plaintiffs have filed a motion for class certification).

The policy disfavoring early motions to strike class allegations is so robust that such motions are rejected even where a plaintiff's class allegations initially appear insufficient. *See In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) (rejecting defendant's motion to dismiss or strike class allegations as premature, even where "plaintiffs' class definitions [were] suspicious and [might] in fact [have been] improper," on the grounds that "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery[.]"); *In re Jamster Mktg. Litig.,* No. 05CV0819 JM (CAB), 2009 WL 1456632, *7 (S.D. Cal. May 22, 2009) ("Even though the arguments of [the defendant] may ultimately prove persuasive, the court declines to address issues of class certification at the present time. Piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties").

Even if the Court were willing to consider Defendant's motion to strike, however, Plaintiff has not alleged a fail-safe class. In *Wolfkiel v. Intersections Ins. Servs. Inc.*, plaintiff alleged the following class: "All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services." 13 C

7133, 2014 WL 866979, at *4 (N.D. Ill. Mar. 5, 2014). The court held as follows: "I am not yet persuaded that the No–Consent Class qualifies as a fail-safe class. It is not clear to me that this class definition creates a situation where membership in the class is dependent upon the validity of a putative member's claim. More importantly, it is not a basis on which to strike Plaintiff's class allegations prior to the certification stage." *Id.* at *6.

Plaintiff alleges a class analogous to the one in *Wolfkiel*. *Compare id.* at *4 *with* FAC ¶ 23 ("[a]ll persons within the United States who received one or more unauthorized text messages sent by or on behalf of Defendant within the four years prior to the filing of this Complaint until Class Certification"). Accordingly, Plaintiff does not allege a fail-safe class.[18]

And even if the Court finds that Plaintiff has alleged a fail-safe class, the Ninth Circuit does not preclude fail-safe classes. *See In re Autozone, Inc., Wage*

[18] *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359, at *2-3 (N.D. Ill. Dec. 13, 2007) is distinguishable because that case was procedurally mature and the issue of plaintiff's class definition arose in connection with its motion for class certification. Here, by contrast, Plaintiff has not received any formal discovery—much less filed a motion for class certification.

Defendant's reliance on *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014), a non-binding Ohio District Court case, is also misplaced. *Sauter* offers little in the way of guidance for other courts or parties attempting to determine whether a particular class definition constitutes a fail-safe class. In *Sauter*, the court concedes that "[c]ourts have had limited occasion to consider fail-safe classes in the context of the TCPA. Those courts that have considered the issue have reached contradictory conclusions." *Sauter*, at *6. The court then summarizes three cases—*Lindsay* (*supra*), *Olney*, and *Wolfkiel*—that address TCPA fail-safe classes, all of which involve similar class definitions. *See Sauter*, at *6-8. In two of those cases—*Lindsay* and *Olney*—the courts found the existence of a fail-safe class. *Sauter*, at *7-8. In the third case—*Wolfkiel*—which involves a class definition similar to the ones alleged in *Lindsey* and *Olney*, the court was not persuaded that plaintiff had alleged a fail-safe class and declined to strike plaintiff's class allegations. *Id.* at *6. Rather than resolve the "contradictory conclusions" of those three cases, however, or attempt to find principled distinctions among the definitions that could give rise to the disparate holdings, the *Sauter* court simply concluded that the *Sauter* plaintiff alleged an impermissible fail-safe class. *Sauter*, at *8-9. The court offered no reasoning for that determination. *See id.* Specifically, it did not offer any explanation for why, under facts similar to those in *Wolfkiel*, its holding is diametrically opposed to *Wolfkiel*. *See id.* Accordingly, *Sauter* is of no help to either the parties or the Court.

*and Hour Employment Practices Litigation*, 289 F.R.D. 526, 546 (N.D. Cal. 2012). For this reason alone, therefore, Defendant's motion to strike should be denied.

Finally, in the Ninth Circuit, it is not necessary to strike class allegations simply because the initially proposed class is a fail-safe class. *Olney v. Job.com, Inc.*, No. 12-01724, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (citing *In re Autozone*, at 546). Rather, Plaintiff should be permitted an opportunity to amend her class definition. *See id.* (allowing plaintiff to amend her class definition and finding no language in the following class definition "that could even arguably cause a 'fail-safe' problem": "All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filling of the Complaint."). Defendant's cited authority is consistent. *See, e.g.*, *Sauter*, at *9 ("'Defining a class so as to avoid, on one hand, being over inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification.'").

## IV.   CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety.[20] Inasmuch as the Court is inclined to grant Defendant's motion, either in whole or in part, Plaintiff respectfully requests leave to amend her complaint. *See DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality.').

Dated: August 15, 2014

Respectfully submitted,
Strategic Legal Practices, APC

By: ___/s/ Payam Shahian___

Payam Shahian
Attorneys for Plaintiff Farideh Haghayeghi

---

[20] Defendant's motion for a more definite statement (*see* Mot. at 11:6-19.) rehashes the same arguments as in its motion to dismiss and, for the same reasons, should be denied.