1    Payam Shahian (State Bar No. 228406)
     pshahian@slpattorney.com
2    Christine Lee (State Bar No. 297332)
     clee@slpattorney.com
3    **STRATEGIC LEGAL PRACTICES, APC**
     1840 Century Park East, Suite 430
4    Los Angeles, California 90067
     Telephone:  (310) 277-1040
5    Facsimile:   (310) 943-3838

6    Attorneys for Plaintiff and the Class

7    *[Additional Plaintiff's Counsel on Signature Block]*

8                    **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   FARIDEH HAGHAYEGHI, on          Case No.: 14-cv-00020-JAH-NLS
     behalf of herself and all others
12   similarly situated,             **PLAINTIFF'S MEMORANDUM OF**
                                      **POINTS AND AUTHORITIES IN**
13              Plaintiff,           **SUPPORT OF MOTION FOR FINAL**
                                      **APPROVAL OF CLASS ACTION**
14        v.                         **SETTLEMENT**

15   GUESS ?, INC.;

16              Defendant.           Date:       April 24, 2017
                                     Time:       2:30 p.m.
17                                   Location:   Courtroom 13B

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT ........... 2

      A.   Plaintiff's Pre-Suit Investigation ............................................ 2

      B.   The Litigation ........................................................................ 2

      C.   Discovery ............................................................................... 3

      D.   Settlement Negotiations ......................................................... 3

      E.   Terms of the Proposed Settlement ......................................... 4

           1.   The Proposed Settlement Class .................................... 4

           2.   The Settlement Relief .................................................. 4

           3.   Notice to the Class of the Settlement .......................... 5

                a)   Email Notice ...................................................... 5

                b)   U.S. Mail Notice ................................................ 6

                c)   Publication Notice .............................................. 6

                d)   Settlement Website and Toll-Free Number ......... 6

           4.   Speedy and Simple Claims Process .............................. 7

           5.   Releases ....................................................................... 7

           6.   Attorneys' Fees and Expenses ...................................... 7

           7.   Incentive Award ........................................................... 8

III.  ARGUMENT AND AUTHORITIES ............................................................. 8

      A.   The Court Should Approve the Settlement as Fair, Reasonable, and Adequate.
           ................................................................................................. 8

           1.   The strength of Plaintiff's Case ................................. 10

           2.   The risk, expense, complexity, and likely duration of further litigation. 10

           3.   The risk of maintaining class action status throughout the trial ............. 12

           4.   The amount offered in settlement ............................... 13

           5.   The extent of discovery completed and the stage of the proceedings .... 14

|  |  |  |
|---|---|---|
| | 6. | The experience and views of counsel ....................................................... 14 |
| | 7. | The presence of a governmental participant.............................................. 15 |
| | 8. | The reaction of class members to the proposed settlement ..................... 15 |
| B. | | The Court-Ordered Notice Program Meets Due Process Standards and Has Been Fully Implemented. ...................................................................... 16 |
| C. | | Class Certification is Appropriate for Settlement Purposes............................. 17 |
| D. | | The Court Should Overrule the Sole Objection. ............................................... 17 |
| E. | | CONCLUSION.................................................................................................... 19 |

# TABLE OF AUTHORITIES

CASES

*Aarons v. BMW of North America, LLC*, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014)
................................................................................................................... 15, 16

*Allen v. Dairy Farmers of America, Inc.*, 2011 WL 1706778 (D. Vt. 2011).................. 18

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................... 18

*Arthur v. Sallie Mae, Inc.*, 2012 WL 4076119 (W.D. Wash. Sept. 17, 2012)................ 11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................... 9

*Coston v. Petro*, 398 F. Supp. 2d 878 (S.D. Ohio 2005) ..................................... 18

*Gribble v. Cool Transports Inc.*, No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. 2008)
................................................................................................................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................. 8, 15, 16, 17

*Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225 (E.D. Cal. Mar. 3, 2014) ..................................................................................................... 12

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) ........................ 12

Lo v. Oxnard European Motors, LLC, 2012 WL 1932283 (S.D. Cal. May 29, 2012)... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)......................................... 18

*Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015)........................................................................................ 12

*Meyer v. Bebe Stores, Inc.*, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)...................... 13

*Meyer v. Bebe Stores, Inc.*, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017)..................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)9, 10, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982)................................................................................. 9, 13

*Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031 (S.D. Cal. Nov. 8, 2013)........................................................................... 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985)........................................ 16

*Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV146256JGBJPRX, 2016 WL 3456939

   (C.D. Cal. Apr. 14, 2016) ................................................................................ 12

*Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953 (C.D. Cal.

   Dec. 17, 2015) ................................................................................................. 12

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ....................................................... 8

*Stern v. DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014) .............................. 12

## I.    INTRODUCTION

On November 8, 2016, this Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement, finding that "[t]he Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations and falls within the range of possible approval as fair, reasonable and adequate." (Dkt. 92 at 1:23-25.)  Plaintiff now seeks final approval of the proposed Settlement Agreement ("Settlement").

Because the relief set forth in the Settlement is an excellent result for the Class, it is clearly fair, reasonable, and adequate, and the Court should grant final approval.  Plaintiff Farideh Haghayeghi brings this case on behalf of herself and all persons in the United States who received a text message from or sent on behalf of Guess between October 16, 2013 and November 8, 2016, inclusive ("Settlement Class").  Plaintiff alleges that these text messages were improper and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

The Settlement provides to the Settlement Class members the opportunity to select his or her choice of either a Settlement Payment or a Settlement Voucher to receive money off any Guess merchandise purchase.  (Dkt. 88-2 § 2.1.)  Especially when viewed in light of the risk that, if this case were to proceed, Plaintiff might not prevail on her liability claims, or a class might not be certified, this represents a highly favorable result for the Class.  The Settlement features the following relief:

**Settlement Payment or Settlement Voucher:** Every Settlement Class member was afforded the right to submit a claim and select his or her choice of either a Settlement Payment of $15 or a Settlement Voucher to receive $30 off any Guess merchandise purchase (no minimum purchase required).

**A Speedy and Simple Claims Process**: To be eligible for a Settlement Payment or Settlement Voucher, a Settlement Class member needed only submit a claim form – which could be done electronically through the Settlement Website or by mail – by March 10, 2017.

1

**Class Member Notification**: Guess has paid most[1] of the cost of notifying Class Members of the settlement by email, regular mail, publication and the Settlement Website. Guess also bore the cost of processing the Claim Forms, and maintaining the Settlement Website and toll-free number to provide Class Members with information concerning the Settlement and the claims process.

**Attorneys' Fees, Costs and Incentive Award:** The time and expense incurred by Plaintiffs' counsel to secure the relief on behalf of the Class, as well as an incentive award to the Plaintiff, will be paid by Guess, separate from the benefits to the Class.

## II.   SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.   Plaintiff's Pre-Suit Investigation

This Settlement is the product of thorough investigation and research into the nature and extent of the allegedly improper text messages.  (*See* Shahian Decl. ¶¶ 2, 3.) Prior to the filing of this action, Class Counsel collectively devoted significant time to investigating the alleged misconduct.  (*See id.* ¶ 2.)  These efforts included, *inter alia*, researching Guess, including its loyalty program and its text messaging practices, as well as conducting research into potential causes of action and other cases where the same or similar allegations were alleged.  (*See id.*)  These initial investigations permitted counsel to conclude that the filing of this case against Guess was justified.  (*See id.*)

### B.   The Litigation

On January 3, 2014, Plaintiff filed a Complaint in the U.S. District Court for the Southern District of California that asserted claims for alleged violations of the TCPA, and sought statutory damages.  *See* ECF/CM Doc. No. 1; Agr. § A.  On June 19, 2014, Plaintiff filed a First Amended Complaint.  *See* ECF/CM Doc. No. 22; Agr. at § B.  On

---

[1] Plaintiffs paid $3,475, which represents fifty percent of the cost for reverse telephone and email research to obtain further contact information for Class Members.

1    July 16, 2014 Guess filed a Motion to Dismiss Plaintiff's First Amended Complaint,

2    Motion to Strike the Class Allegations or in the Alternative, Motion for a More Definite

3    Statement, and on March 24, 2015, the Court issued an order denying Guess's motion.

4    See ECF/CM Doc. Nos. 23 and 29; Agr. at § B.

5         On April 7, 2015, Guess answered the Complaint.  *See* ECF/CM Doc. No. 30;

6    Agr. at § C.   In its Answer, Guess denied the Complaint's allegations, denied that

7    Plaintiff or the putative class have been damaged in any sum whatsoever, denied that

8    Plaintiff or the putative class are entitled to the relief requested or any other relief, and

9    asserted several affirmative defenses.  *See id.*

10        On September 28, 2015, Guess filed a Motion to Temporarily Stay Action

11   pending the outcome of a consolidated petition challenging the validity of the FCC's

12   July 2015 Omnibus TCPA Declaratory Ruling.  *See* ECF/CM Doc. No. 46.  The Court

13   had not yet ruled on the motion when this Settlement was reached.

14        **C.   Discovery**

15        Plaintiff and Guess have investigated the facts and have analyzed the relevant

16   legal issues regarding the claims and defenses asserted in the Action.  (*See* Shahian Decl.

17   ¶¶ 2, 3.)  *And see* Agr. at § H.   The Parties have conducted formal and informal

18   discovery, including but not limited to propounding and responding to Requests for

19   Production and Interrogatories.  *See id.*  The Parties have also engaged in extensive meet

20   and confer efforts and related discovery motion practice, including filing three discovery

21   motions (one by Plaintiff and two by Guess).  *See* ECF/CM Doc. Nos., 71, 73, 74

22   [Court's orders on the discovery motions].  Plaintiff also subpoenaed discovery from

23   several third-party entities that were involved in Defendant's text messaging program.

24        **D.   Settlement Negotiations**

25        On May 18, 2015, the Parties prepared statements for, and participated in, an

26   Early Neutral Evaluation Conference before Magistrate Judge Nita L. Stormes.  *See*

27   ECF/CM Doc. No. 33.  The case did not settle.  *See id.*

28

On January 6, 2016, the Parties participated in a full day mediation session before Hon. Edward A. Infante (ret.) of JAMS, Inc.  *See* Agr. at § D.  Although the mediation provided a constructive forum for settlement discussions, it did not result in a settlement.  *See id.* at § E.  After the mediation, with the assistance of Judge Infante, the parties engaged in additional efforts to settle the Class claims.  (Shahian Decl. ¶¶ 4, 5.)  The Parties resolved the underlying Class claims in mid-February 2016.  (*Id.*)  Only after resolving the Class claims did the Parties begin negotiation of attorneys' fees, costs and the Named Plaintiff's Incentive Award.  (Shahian Decl. ¶ 6.)  These issues were eventually resolved with the mediator's assistance.  (*Id.*)

In sum, as a result of the progress made at the mediation, and the subsequent discussions, the Parties were able to reach a settlement of the Action, the terms of which are set forth in the Agreement.  *See Agr.* at § G.

### E.    Terms of the Proposed Settlement

#### 1.    The Proposed Settlement Class

The Class includes all persons in the United States who received a text message from or sent on behalf of Guess between October 16, 2013 and November 8, 2016, inclusive. Excluded from the Class are Guess's Counsel, Guess's officers and directors, and the judge presiding over the Action.   The Class includes just under 75,000 members[2].

#### 2.    The Settlement Relief

Each Authorized Claimant is entitled to his or her choice of either (a) a Settlement Payment, or (b) a Settlement Voucher. To be entitled to receive either a Settlement Payment or Settlement Voucher, a Class Member must timely submit a valid and complete Claim Form and elect a form of relief.  For Class Members

---

[2] The parties had originally believed there to be over 200,000 Class members as set forth in Plaintiff's motion for preliminary approval.  However, after further analysis including deduplication and checking records for membership in the settlement class, that number was reduced to just under 75,000.  A more complete explanation of how the list of Class Members was generated is set forth in the Declaration of Leo Norton submitted by Guess.

who elect the $15 Settlement Payment, payments will be made by check, which have to be negotiated within ninety (90) calendar days from when the checks are first mailed. Any funds from checks not negotiated within that ninety (90) calendar day period shall be returned to Guess.  For Class Members who elect a Settlement Voucher, the voucher will be sent by the Claims Administrator and are subject to the following conditions: (a) Vouchers will be valid for six (6) months after issuance; (b) Vouchers are for a single-use only (maybe used only one time); (c) Vouchers can be redeemed at any Guess owned retail stores in the United States; (d) Vouchers are transferable; (e) Vouchers are not redeemable for gift cards or cash, including no cash back; (f) Vouchers will not be valid for prior purchases, cannot be applied to any credit card balances, and cannot be used online; (g) Vouchers will not be replaced if lost, stolen, expired, or damaged; and (h) Vouchers may be used on sale item(s), however, they may not be combined with any other promotional coupon or voucher.

### *3.*     *Notice to the Class of the Settlement*

Before providing notice, the Claims Administrator (i) conducted a reverse telephone number search through a primary and secondary source for those numbers that Guess provided from its records for which there is no U.S. Postal address or email address and (ii) conducted a reverse email search for Guess records having a U.S. Postal address but no email address and U.S. Postal addresses identified through the reverse telephone number search in (i).  (*See* Declaration of Settlement Administrator ["Admin. Decl."] ¶¶ 6, 7.)  The Claims Administrator also checked all U.S. Postal addresses provided by Guess or obtained from reverse searches against the National Change of Address Database before providing U.S. Mail Notice.  (*See id*. ¶ 9)   Guess and the Claims Administrator then provided the Class with notice of the proposed settlement by the following methods.

a) Email Notice

In accordance with the Amended Preliminary Approval Order, the Claims Administrator sent an Email Notice to each Class Member for whom Guess has a valid email address. (*See* Admin. Decl. ¶¶ 10-13.)  The Email Notice provided the web address of the Settlement Website and an email and mailing address to contact the Claims Administrator. (*See id.* ¶ 10, Ex. B.)

b) U.S. Mail Notice

In accordance with the Amended Preliminary Approval Order, the Claims Administrator, sent a postcard containing a U.S. Mail Notice to each Class Member for whom Guess has a facially valid U.S. Postal address and who was not sent notice by email. (*See* Admin. Decl. ¶¶ 10, 12-16.)  The postcard contained the U.S. Mail Notice and provided the web address of the Settlement Website and an email and mailing address to contact the Claims Administrator. (*See id.* ¶ 10, Ex. C.)

c) Publication Notice

In accordance with the Amended Preliminary Approval Order, the Claims Administrator implemented an online media notice via an Internet text announcement containing a URL or link to the Settlement Website and appearing through Google Adwords. (*See* Admin. Decl. ¶ 17.)

d) Settlement Website and Toll-Free Number

In accordance with the Amended Preliminary Approval Order, the Claims Administrator set up a Settlement Website and a toll-free number. (*See* Admin. Decl. ¶ 18.)  The Settlement Website contains the Complaint, Settlement Agreement, Preliminary Approval Order, Full Notice, Claim Form, and Class Counsel's fee application. (*Id*.)  The Settlement Website will remain active until at least the Final Settlement Date. (*See id.*; *and see id.* ¶ 25.)  The Settlement Website was designed and constructed to accept electronic Claim Form submissions. (*See id.* ¶ 19.)

PLAINTIFF'S MOTION FOR FINAL APPROVAL

1   The toll-free telephone number was set up to receive calls relating to the
2   Settlement and provide automated information about the Settlement.  (*See id.* ¶
3   21.)  The toll-free telephone number will remain active until at least the Final
4   Settlement Date.  (*See id.*; *and see id.* ¶ 25.)

5       *4.    Speedy and Simple Claims Process*

6       To be eligible to receive a Settlement Payment or Voucher, Class Members had
7   to complete and submit a Claim Form and deliver that form to the Claims Administrator
8   no later than March 10, 2017.  Agr. at § 3.6.  The Claim Form could be submitted
9   electronically or by postal mail.  *Id.*  (*And see* Admin. Decl. ¶ 22.)  The delivery date was
10  deemed to be the date (a) the Claim Form is deposited in the U.S. Mail as evidenced by
11  the postmark, in the case of submission by U.S. mail, or (b) in the case of submission
12  electronically through the Settlement Website, the date the Claims Administrator
13  receives the Claim Form, as evidenced by the transmission receipt.  *Id.*  The Claims
14  Administrator then reviewed all submitted Claim Forms for completeness, validity,
15  accuracy, and timeliness.  *Id.* at § 3.7.  (*And see* Admin. Decl. ¶¶ 22, 25.)

16      If the Court approves the Settlement of this Action, Guess, either itself or through
17  the Claims Administrator, must mail the Settlement Payments or Settlement Vouchers to
18  the Authorized Claimants 45 calendar days following the Final Settlement Date.  Agr. at
19  § 3.11.

20      *5.    Releases*

21      As part of the consideration for this Settlement Agreement, upon the Final
22  Settlement Date, the Plaintiff and Settlement Class Members grant Guess a standard
23  release that tracks the scope of the Plaintiff's allegations in the Complaint.  Agr. at § 4.4.
24  Plaintiff and each Class Member who has not timely requested exclusion from the Class
25  relinquish and discharge all Released Parties from each of the Released Claims.  *See id.*

26      *6.    Attorneys' Fees and Expenses*

27      The time and expense incurred by Plaintiff's Counsel to secure the relief on
28  behalf of the Settlement Class will be paid by Guess, separate from the benefits to the

Settlement Class.  Agr. at § 2.3.  Class Counsel seek attorneys' fees and expenses in the total amount of $495,000, an amount that is more than $160,000 below their lodestar, which will continue to increase due to necessary, further work related to finalizing the Settlement and the claims process.  (*See* Dkt. 95 [Pl.'s Mot. for Attorney Fees, Costs, and Service Award].)

> 7.    *Incentive Award*

Separate and apart from the benefits to the Class, Guess will pay Plaintiff an amount to be approved by the Court, not to exceed $5,000, for the time and effort she has personally invested in this Action.

## III.   ARGUMENT AND AUTHORITIES

### A. The Court Should Approve the Settlement as Fair, Reasonable, and Adequate.

To approve a class action settlement under Fed. R. Civ. P. 23(e), the Court must find that the settlement is "fair, reasonable, and adequate," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the fairness of the settlement, the Court should balance "the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial;

the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a government participant, and the reaction of the class members to the proposed settlement."   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice*, 688 F.2d at 625.)   The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances of each case.   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

In affirming the settlement approved by the trial court in *Class Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the connected issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."   *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation and citation omitted).   Where, as here, the settlement is the product of arm's length negotiations conducted by capable counsel with extensive experience in complex class action litigation, the court begins its analysis with a presumption that the settlement is fair and should be approved.   *See* 4 NEWBERG ON CLASS ACTIONS (4th ed.) § 11.41.

As discussed in greater detail below, the Settlement presented here is an excellent result for the class and is entitled to a presumption of fairness.   First, the settlement was reached only after extensive arm's-length negotiations and with the supervision and assistance of Hon. Edward A. Infante (ret.) of JAMS, an experienced and respected mediator.   (*See* Shahian Decl. ¶¶ 4, 5.)   Thus, there is no indication of collusion.   Second, Class Counsel and counsel for Guess are highly experienced in class action litigation, acted in good faith, and represented their clients' best interests in reaching the settlement.   (*See id.* ¶¶ 9-18.)   Finally,

9

the Settlement is a favorable result for Settlement Class Members without the risk and delay that would accompany further prosecution of this case.  All of the *Class Plaintiffs* factors favor approval, as shown below.

### 1. The strength of Plaintiff's Case

Although Plaintiff believes strongly in her claim, Guess has vigorously denied liability and asserted numerous substantive defenses to certification and liability: for example, that it did not use an ATDS to send text messages; that it obtained prior consent or written express consent before sending text messages; and that Plaintiff is neither an adequate nor a typical class representative.  The relief offered by the Settlement is even more attractive when viewed against the risk that Guess might prevail on these affirmative defenses.  *See DIRECTV, Inc.*, 221 F.R.D. at 526 ("[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'").   This factor therefore weighs in favor of approval of the Settlement.

### 2. The risk, expense, complexity, and likely duration of further litigation

The risk of further protracted litigation—and ultimately of no recovery at all—was particularly acute in this case, given the various affirmative defenses available to Guess.  Those risks were amplified here because TCPA cases involve the intersection of several—and sometimes conflicting—legal regimes, including federal statutory law, multi-jurisdictional case law, and FCC regulations.  Making matters worse, in each of these domains, the law is ever-evolving, causing the terrain on which the parties are litigating to constantly shift beneath their feet.  *Arthur v. Sallie Mae, Inc.*, 2012 WL 4076119, at *1 (W.D. Wash. Sept. 17, 2012) ("[t]he risks involved in this litigation were notable given the evolving state of the

1   law impacting Plaintiffs' TCPA claims and Sallie Mae's numerous potential
2   affirmative defenses."). The following are representative of the challenges Class
3   Counsel faced.

4        First, and most obviously, the Court had not ruled on Defendant's motion to
5   stay (*see* ECF/CM Doc. No. 46), which asked the Court to stay this action pending
6   the resolution of a petition to the D.C. Circuit for review of the FCC's 2015
7   declaratory ruling. Were this Court to grant the motion to stay, this litigation
8   could stagnate for months, if not years, thereby delaying (or, as Defendant
9   contends, denying) relief to the Class. Despite the petition being filed on July 10,
10  2015, the D.C. Circuit Court still has not ruled on the petition. And regardless of
11  the outcome of the petition, a further appeal will likely follow.

12       Second, Defendant has contended that the anticipated D.C. Circuit ruling
13  would impact the substantive issues of this action, particularly with regard to the
14  definition of "automatic telephone dialing system." Under the TCPA, Plaintiff
15  bears the burden of showing that Defendant used an automatic telephone dialing
16  system ("ATDS") to transmit text messages. A ruling from the D.C. Circuit
17  would likely introduce confusion, given that a body of case law has already built
18  up around that definition in the Ninth Circuit and elsewhere. Accordingly, courts
19  nationwide would be forced to determine what sort of deference, if any, were due
20  to the FCC, and to reconcile any perceived differences in definition.

21       Third, even assuming that Plaintiff was able to successfully certify a class,
22  there was the ever-present risk of losing a jury trial. And, even if Plaintiffs did
23  prevail, any recovery could be delayed for years by an appeal. Any potential
24  statutory recovery in this case would likely be impossible to recover as a practical
25  matter due in part to the fact that Defendant would have every incentive to litigate
26  appeals of any such judgment.

27       Class Counsel believe they could have prevailed on these issues, but
28  success was by no means assured. Litigating these issues would risk recovering

nothing for the Class, and would require a significant additional expenditure of time, money, and resources.

Given all the above risks, the Settlement obtained for the Class is particularly favorable.

### 3. The risk of maintaining class action status throughout the trial

While Plaintiff believes, as explained below, (*see infra* § III.C.), that class certification would be appropriate for litigation purposes, there is a risk that a class might not be certified or that class action status might not be maintained through trial, as shown by recent decisions denying class certification in TCPA cases. *See, e.g.*, *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV146256JGBJPRX, 2016 WL 3456939, at *17 (C.D. Cal. Apr. 14, 2016) (certification denied); *Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953, at *8 (C.D. Cal. Dec. 17, 2015) (same); *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *6 (E.D. Cal. Mar. 3, 2014) (same).

Indeed, Class Counsel is aware of only a handful of TCPA text message cases that have been certified in California. *See Stern v. DoCircle, Inc.*, WL 486262, at *8 (C.D. Cal. Jan. 29, 2014) (plaintiffs represented by Berns Weiss LLP); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (plaintiffs represented by Edelson McGuire, LLC); *Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at *12 (S.D. Cal. Nov. 8, 2013) (plaintiffs represented by Nicholas and Tomasevic LLP and Law Offices of George Rikos); *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487, at *8 (N.D. Cal. Dec. 10, 2015) (plaintiffs represented by Stonebarger Law and Kearney Littlefield LLP). Included in this small set of plaintiff's firms are certain of Class Counsel here—namely SLP, MSKF, and EcoTech—who recently certified a contested text messaging TCPA class action, *see Meyer v. Bebe Stores, Inc.*, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015), ***and*** defeated a

1    motion to decertify, *see Meyer v. Bebe Stores, Inc.*, 2017 WL 558017 (N.D. Cal.
2    Feb. 10, 2017). This factor thus also favors approval.

### 4. The amount offered in settlement

4    "Of course, the very essence of a settlement is compromise, 'a yielding of
5    absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at
6    624.   Because of this need for compromise and the policy favoring settlement,
7    "[t]he proposed settlement is not to be judged against a hypothetical or speculative
8    measure of what might have been achieved by the negotiators." *Id.* at 625.
9    Instead, "[e]stimates of what constitutes a fair settlement figure are tempered by
10   factors such as the risk of losing at trial, the expense of litigating the case, and the
11   expected delay in recovery (often measured in years)." *Browne*, 2010 WL
12   9499072 at *12.

13   The proposed Settlement in this case is an excellent result—well within the range
14   of reasonableness—and easily merits judicial approval.   As explained above, this
15   Settlement entitles each Class Member to his or her choice of either a cash payment of
16   $15 or a voucher for $30.  This Settlement compares favorably with other recent TCPA
17   settlements, especially those in the retail context (as here).  *See, e.g.*, *Kazemi v. Payless
18   Shoesource, Inc.*, No. 09-5142 (N.D. Cal. 2012) ($25 merchandise certificate per
19   claimant).  *And see Couser v. Comenity Bank*, No. 12-2484, ECF/CM Doc. No. 91 (S.D.
20   Cal. May 27, 2015) (approximately $13.75 per claimant); *In re Capital One TCPA
21   Litigation*, No. 12-10064, ECF/CM Doc. No. 329 (N.D. Ill. February 12, 2015) (at least
22   $34.60 per claimant); *Rose*, 2014 WL 4273358, at *10 (average of $20 to $40 per
23   claimant); *id.* (referencing the *Arthur v. Sallie Mae* TCPA settlement, in which each
24   claimant received approximately $20 to $40); *Malta*, 2013 WL 444619, at *7
25   (approximately $2 per claimant if all eligible claimants filed claims).

26   In addition to this monetary relief, Plaintiff's efforts have resulted in
27   significant non-monetary benefits as well.  Following the commencement of this
28   action, Guess terminated its text messaging program.  Moreover, Class Members

1    (and non-Class Members alike) also benefit from the Settlement because the

2    Settlement will serve as a deterrent to future violations of the TCPA.  *See Lo v.*

3    *Oxnard European Motors, LLC*, 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012);

4    *Malta v. Fed. Home Loan Mortgage Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5,

5    2013).

6          Accordingly, this factor also supports approval.

7          **5. The extent of discovery completed and the stage of the**

8              **proceedings**

9          As described in more detail above, the parties engaged in both formal and

10   informal discovery over the merits Plaintiff's claims and Defendant's defenses.

11   The parties engaged in a motion to dismiss, motion to stay and several discovery

12   motions.   In addition to their own independent investigations, the parties

13   propounded and responded to voluminous discovery requests, and reviewed

14   significant amounts of documents and data produced during the course of

15   discovery and settlement discussions.  (Shahian ¶ 3.)  This process provided the

16   parties with a well-developed record on which to evaluate the relative strength of

17   Plaintiff's claims and Defendant's defenses for settlement purposes, favoring

18   settlement approval.  *See DIRECTV, Inc.*, 221 F.R.D. at 528 ("A settlement

19   following sufficient discovery and genuine arms-length negotiation is presumed

20   fair.").

21          **6. The experience and views of counsel**

22          The Settlement was negotiated at arm's length by counsel well-versed in

23   class litigation. In addition, Hon. Edward A. Infante (ret.), an experienced

24   mediator, presided over the mediation and subsequent discussions. (*See* Shahian

25   Decl. ¶¶ 4, 5.)  Ultimately, this Settlement was reached with his assistance after

26   the parties did not reach a settlement at mediation.  Class Counsel believe that the

27   Settlement is an excellent result for the class.  (*See id.* ¶ 9.)  The Settlement is

28   therefore entitled preliminarily to "a presumption of fairness."  *Gribble v. Cool*

1   *Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15,

2   2008).

3   ### 7. The presence of a governmental participant

4   The parties have notified the Attorneys General of all 50 states of this

5   Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

6   (Settlement Administrator Decl. ¶ 4.)   No Attorney General has sought to

7   intervene or objected to the Settlement.  *See Aarons v. BMW of North America,*

8   *LLC*, 2014 WL 4090564, at *13 (C.D. Cal. Apr. 29, 2014) (observing that notice

9   of settlement was provided to federal and state governmental officials, and none

10  objected).

11  ### 8. The reaction of class members to the proposed
12  ### settlement

13  The reaction of class members to the proposed settlement has been positive.

14  In all, 947 valid and timely claims were submitted by Class Members.  (*See*

15  Admin Decl. ¶ 22.)

16  The deadline to submit an objection or request for exclusion from this

17  Settlement expired on March 10, 2017.   In all, only one objection to the

18  Settlement was filed and one class member requested to be excluded from this

19  Settlement.  (*See* Admin. Decl. ¶ 24.)  The fact that there was only one objection

20  and one exclusion shows that overall the Class strongly supports the Settlement.

21  *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the

22  class willingly approved the offer and stayed in the class presents at least some

23  objective positive commentary as to its fairness."); *Aarons*, 2014 WL 4090564 at

24  *14 (holding that where number of claims far exceeded number of opt-outs and

25  objections, "[t]his highly positive response to the settlement strongly suggests that

26  the Class finds the settlement to be fair, reasonable, and adequate.")

27  Given the favorable terms of the Settlement and the rigorous manner in which

28  these terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate

15

1    compromise of the issues in dispute.   This Court should therefore approve the

2    Settlement.

3    **B. The Court-Ordered Notice Program Meets Due Process Standards**

4    **and Has Been Fully Implemented.**

5    Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court

6    to "direct to class members the best notice that is practicable under the

7    circumstances, including individual notice to all members who can be identified

8    through reasonable effort."   In addition, Rule 23(e)(1) requires that before a

9    proposed settlement may be approved, the Court "must direct notice in a

10   reasonable manner to all class members who would be bound by the proposal."

11   *Id.*; *see Hanlon*, 150 F.3d at 1026 ("Adequate notice is critical to court approval of

12   a class settlement under Rule23(e).")  In order to protect the rights of absent class

13   members, the Court must provide the best notice practicable under the

14   circumstances.   *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12

15   (1985).

16   Here, the Email Notice, U.S. Mail Notice, Publication Notice, Settlement

17   Website, and Toll-Free Number met all these requirements.   Before providing Email

18   Notice and U.S. Mail Notice, the Claims Administrator (i) conducted a reverse telephone

19   number search through a primary and secondary source for those numbers that Guess

20   provides from its records for which there is no U.S. Postal address or email address and

21   (ii) conducted a reverse email search for Guess records having a U.S. Postal address but

22   no email address and U.S. Postal addresses identified through the reverse telephone

23   number search in (i).  The Claims Administrator also checked all U.S. Postal addresses

24   provided by Guess or obtained from reverse searches against the National Change of

25   Address Database before providing U.S. Mail Notice.

26   In addition, the Settlement Website allowed Class Members to access (and print)

27   the Complaint, Settlement Agreement, Preliminary Approval Order, Full Notice, Claim

28   Form, and, Class Counsel's fee application.  It also assisted individuals in determining

16

1   whether they are Class Members, and informed them of their right to object to the

2   Settlement or opt out. *Id.*

3         This Notice program was designed to meaningfully reach the largest possible

4   number of Class Members, identified through the Class List.  Accordingly, the various

5   forms of Notice here satisfy due process, serve as the best notice practicable under the

6   circumstances, and constitute due and sufficient notice.  The form of the notice

7   contained all of the content required by Rule 23(c)(2)(B), including a definition of

8   the Settlement Class, a description of the action and the claims; notice of the

9   Settlement Class members' right to opt out of the proposed settlement; and notice

10  of their right to object to or comment on the settlement and any application for

11  attorneys' fees, costs, and service awards.  Adequate notice has therefore been

12  provided.  *Hanlon*, 150 F.3d at 1011 (holding notice requirements met where the

13  notice provided class members "with the opportunity to opt-out and individually

14  pursue any state law remedies that might provide a better opportunity for

15  recovery").

16  **C. Class Certification is Appropriate for Settlement Purposes.**

17        In its Preliminary Approval Order dated November 8, 2016, the Court

18  provisionally certified the Settlement Class.  (Dkt. 92.)  All required criteria for

19  class certification remain satisfied.  (*See* Dkt. 92 at §§ 1-7.)  For the same reasons

20  that the Court conditionally certified the Settlement Class before, the Court should

21  find that the Class meets the requirements of Rule 23 for purposes of final

22  approval.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 622 (1997); MANUAL

23  FOR COMPLEX LITIGATION, § 21.632.

24  **D. The Court Should Overrule the Sole Objection.**

25        There has been a single timely objection to the Settlement, filed by Melissa

26  Randolph.  (*See* Admin. Decl. ¶ 24.)  Ms. Randolph's entire objection is as

27  follows:

28

1
2
3
4
5
6
7
8
9

> My name is Melissa Randolph and I object to the class
> action settlement. I received unsolicited texts for this
> case. The attorney fees in this case are too high and will
> take too much of the consumer's money and most
> consumers do not realize there is a settlement. The
> settlement is very confusing. My cellular number that
> received the texts is [redacted] but please do not contact
> me at this number. I live at [redacted], Lake Worth, FL
> 33460.

10  (Admin. Decl. ¶ 24, Ex. E.)

11  This objection should be overruled for several reasons.  First, it has been

12  determined that Ms. Randolph is not even a Class Member.  Counsel for Guess, in

13  cooperation with Class Counsel, has searched the class list and other Guess databases for

14  Ms. Randolph's name and telephone number.  This search confirmed that Ms. Randolph

15  is not a Class Member.  (*See* Declaration of Leo Norton ["Norton Decl."] ¶ 12.)  Given

16  that Ms. Randolph is not a Class Member she has no standing to object to any aspect of

17  this Settlement.  *Coston v. Petro*, 398 F. Supp. 2d 878, 882 (S.D. Ohio 2005) (citing

18  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)) ("The [c]ourt concludes

19  that none of the Plaintiffs have Article III standing to challenge the constitutionality of

20  Ohio Rev. Code section 2950.031 because they have failed to establish that they are

21  subject to its provision"); *See Allen v. Dairy Farmers of America, Inc.*, 2011 WL

22  1706778, at *5 (D. Vt. 2011) ("Nonparties to a settlement generally do not have standing

23  to object to the settlement of a class action.") (quoting Newberg on Class Actions).

24  Second, even if Ms. Randolph's objection was considered by the Court – and it

25  should not be – the objection is meritless.  Ms. Randolph is a serial class action objector

26  who has asserted the same baseless objection in multiple cases, regardless of the

27  specifics of that individual case.  For instance, Class Counsel found two other objections

28  filed by Ms. Randolph where she similarly asserted that "the attorney fees…are too high

18

1    and will take too much of the consumer's money," that "most consumers do not realize

2    there is a settlement," and that the "settlement is very confusing."  (*See* Shahian Decl.

3    Exs. 1 and 2.)

4         Like the verbatim objections she has previously filed, Ms. Randolph does not

5    explain her broad assertions or even reconcile them to the facts of this Settlement.  For

6    instance, given that Class Counsel are being paid separate and apart for the benefits to

7    the Class, they are not taking any money from a settlement fund that would otherwise go

8    to the Class.  Similarly, she has not explained why she believes that "most consumers"

9    do not know about this Settlement or in what way this Settlement is "confusing."  In

10   contrast, Class Members have been notified about this Settlement through the robust

11   notice plan that was a combination of direct notice (via email and U.S. Mail) and

12   publication notice.  This notice set forth the terms in simple and straight-forward

13   language, and provided instructions on how to get additional information.

14        In summary, Ms. Randolph's recycled objection is baseless and should be

15   overruled.

16
17   **E. CONCLUSION**

18        For the reasons stated above, the Court should grant final approval of the

19   Settlement.

20   Dated:  April 10, 2017

21                                  By:   /s/

22                                  Payam Shahian (State Bar No. 228406)
                                    pshahian@slpattorney.com
23                                  Christine Lee (State Bar No. 297332)
                                    clee@slpattorney.com
24                                  **Strategic Legal Practices, APC**
                                    1840 Century Park East, Suite 430
25                                  Los Angeles, California 90067
                                    Telephone: (310) 277-1040
26                                  Facsimile: (310) 943-3838

27                                  Matthew R. Mendelsohn (*Pro Hac Vice*)
                                    mmendelsohn@mskf.net
28

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:(973) 228-9898
Facsimile: (973) 228-0303

Hallen D. Rosner (State Bar No. 109740)
halrosner@aol.com
**Rosner, Barry & Babbitt, LLP**
10085 Carroll Canyon Road, First Floor
San Diego, California 92131
Telephone:(858) 348-1005
Facsimile: (858) 348-1150

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
**EcoTech Law Group, P.C.**
333 First St. Ste. C
San Francisco, CA 94105
Telephone: (415) 503-9194
Facsimile: (415) 651-8639

*Attorneys for Plaintiff and the Class*

PLAINTIFF'S MOTION FOR FINAL APPROVAL